IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

  vs.                         No. 1:25-CR-04148-MLG

LUCAS GOMEZ-LOPEZ,

      Defendant.

**AMENDED**
**SENTENCING MEMORANDUM**
**ON BEHALF OF LUCAS GOMEZ-LOPEZ**

Lucas Gomez-Lopez, through counsel, submits this AMENDED memorandum for consideration at sentencing. Mr. Gomez-Lopez requests a sentence of time served, or twenty (20) months and twenty-one (21) days. The applicable sentencing range is fifteen (15) to twenty-one (21) months based on an Offense Level of 13 and a criminal history category of II. Mr. Gomez-Lopez will be filing a separate objection to the presentence report, but agrees that the above calculated guideline is correct and respectfully requests that upon consideration of the formal objection and consideration of this sentencing memorandum that the Court also find that the applicable guideline is fifteen (15) to twenty-one (21) months based on an Offense Level of 13 and a criminal history category of II and that the requested sentence is sufficient but not greater than necessary under 18 U.S.C. 3553(a)(1-7)

      **i.**      **The nature and circumstances of the offense and the history and characteristics of the defendant.**

Federal Rule of Criminal Procedure allows "An attorney for the government and the

1

defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement." F.R.C.P. 11(c)(1) Each party in this case gained and granted allowances. Most importantly in this agreement, the government agreed to dismiss the Possession of a Firearm by an Alien contrary to U.S.C. §§ 922(g)(5) and 924. Mr. Gomez-Lopez agreed to plead guilty to reentry and to give up several rights including the right to appeal. The government agreed to dismiss the Alien in Possession of a Firearm based on the challenges that the government would have in being able to prove that Mr. Gomez-Lopez possessed the weapon. First, there were two (2) other persons present in his car that day. Second, there was the defense of duress. Third, the issue of self-defense was considered.

At the time, Mr. Gomez-Lopez used, daily, methamphetamine and fentanyl. In his drug use, he surrounded himself by other drug users of hard drugs. Drug users tend to know each other. Mr. Gomez-Lopez saw a friend of his, Jacob Velarde, near the home of a person who sold drugs. Jacob had just walked out of Marcelino Herrera's car, the decedent. Jacob got then got into Mr. Gomez-Lopez' vehicle. Marcelino drove his car at Mr. Gomez-Lopez' car. Mr. Gomez-Lopez yelled at Marcelino, to ask what was the problem. Marcelino then walked toward Mr. Gomez-Lopez, reached toward the waist band behind him, pointed a gun toward Mr. Gomez-Lopez and fired. The bullet missed Mr. Gomez-Lopez who then grabbed a gun that was in the vehicle shot back. The adrenaline, the fear of his life and the suddenness of the situation did force him to shoot twice. He acted to save his life. He regrets the death of Marcelino Herrera and wishes that things had been different, that the argument would not have happened, and that he would be alive today.

His life before drugs

Mr. Gomez-Lopez use of methamphetamine and fentanyl began a few years back. Before

his use, Mr. Gomez Lopez had a good life with his wife Martha Casillas and her children.[1] The two have been together since 2014. Before the drug use, she describes him as kind and as a respectful person. They attended church at Del Valle Baptist Biblical Church in Arroyo Seco. Lucas worked as a mechanic and a mason to support himself and his family. He enjoyed his life and he was stable. His step-daughter, Yulissa Martinez, is grateful to him for the support she felt before she married, when she attended University of New Mexico back in 2017. She graduated from the University of Hawai'i at Manoa in Human Development and Family Studies. She describes him as kind and respectful. She blames his bad decisions "stem from the company he kept rather than a reflection of his true character." Alice Romero and Maria Chavez also describe him as respectful and polite with a positive attitude.

Soon his drug use, and his subsequent conduct caused, ruined his family. He left his family. This addiction lead to arguments. The addiction lead to him being gone from his home for hours, sometimes for days. His weakness to drugs caused him to have intimate relationships with women who were not his wife. His drug use led him to lose his job prospects.

He is forty (40) years old now and he finds that it is time to get his life in order. Since his arrest, he had remained sober. He is confident that upon release he will remain sober. He will return to Mexico. When there, he intends to find work. He also intends to be with his family, which includes his mother and his brothers and sisters. In his own words, he intends to "vivir como la gente" (to live like decent people)." He describe life with other drug addicts as pointless ("no tiene caso") and has no future ("no tiene futuro"). Living on the streets is tiresome and frustrating. He does not want to return to it. He has every intention to avoid drug use, avoid the life that comes with it and return to the comfort of his family.

---

[1] Letters of Support from Martha Casillas, wife, including certified translation, Yulissa Martinez, step-daughter, Alice Romero, business owner, and Maria Chavez, cousin attached as Exhibit A.

When he returns to his family intends to maintain his sobriety. He wants to be a better example to his nieces and nephews. He would hate his nieces and nephews to think that drug use is a normal way to live. He intends to maintain his sobriety. He intends to find work. He cannot live a better, different life without making better and different choices.

      **ii.**      **The need for the sentence to be imposed, to reflect the seriousness of the offense, to promote just punishment, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.**

This charge for which the Court will be sentencing him is a non-violent, status crime and twenty (20) months and twenty-one (21) days is a significant sentence for such crime that does already consider his prior history when determining the proper range. His prior conviction is almost seventeen (17) years. He was only twenty one (21) years old at that time, and only recently arrived in America.

He also asks that the Court consider Mr. Gomez-Lopez will have an additional punishment. He will be deported, in essence banished from his life, from his family. He understands that he must not return to the United States and has every intention to move to his hometown and return to his mother's home and to his siblings. The immigration detainer is verified and described on the cover sheet of the presentence investigation report.

      **iii.**      **To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Despite the limited access to classes or treatment at the Cibola County Correctional Center in Milan, New Mexico, Mr. Gomez-Lopez was able to receive a certificate.[2]

---

[2] Please find Certificate of Completion of the Univex Food Prep Equipment course attached as Exhibit B.

Mr. Gomez-Lopez will not have the opportunity to receive education or training available to other inmates serving time in the Bureau of Prisons. The Immigration detainer placed on him will prevent him from entering and/or completing such programs. Even should he be able to convince the administration at his BOP facility to allow him to enter a program, he will likely not be able to receive any additional meritorious credit taken from his sentence.

### iv. The kinds of sentence and sentencing range established and the need to avoid unwarranted sentence disparities among defendants.

Lucas respectfully requests a sentence of time served, which is above the sentence of others similarly situated relative to their criminal history and offense level. The requested sentence does not create an unwarranted sentencing disparity. The applicable range already reflects his criminal history. It already reflects his seventeen (17) year old conviction, when he was only twenty one (21). He also asks that the Court consider, in mitigation, that he has managed to live his life, with only a second (2nd) grade education. While competency is not an issue, without a doubt, a second-grade education causes significant challenges for him in his life. Yet, despite these challenges he built a life with Martha and helped raise her children, including a child who successfully graduated college and is now a mother.

He asks that the Court consider that a time-served sentence is a sufficient deterrent to him and will promote respect for the law. Almost twenty-one (21) months, is a significant time and sufficient time for a charge of being in the United States without permission after deportation.

He also asks no period of supervised release be ordered per U.S.S.G. §5D1.1(c), which states that "the court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."

Lucas respectfully requests that the Court grant his request for a sentence of twenty (20)

5

months and (21) days and the Court find that the requested sentence is sufficient but not greater than necessary to comply with the purposes and goals of sentencing per 18 U.S.C. 3553(a)(1-7), without being greater than necessary.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489


 /s/  *filed electronically*        .
IRMA RIVAS, AFPD
Attorney for LUCAS GOMEZ-LOPEZ